STATE OF NORTH CAROLINA
v.
SHAWN LEDERER-HUGHES
No. COA09-280.
Court of Appeals of North Carolina.
Filed November 17, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Peter A. Regulski, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant appellant.
ROBERT N. HUNTER, Jr., Judge.
On 18 August 2008, Shawn Lederer-Hughes ("defendant") was convicted by a jury of first-degree rape of his six-year-old adopted daughter, and sentenced by Judge Ripley E. Rand to a minimum of 300 and a maximum of 369 months in prison with lifetime satellite-based monitoring ("SBM") thereafter. Defendant appeals his judgment arguing that two expert witnesses improperly "vouched" for his daughter's veracity, and that he received inadequate representation due to the failure of his trial counsel to raise an ex post facto argument to the SBM order. We find no error and affirm.

Facts
Defendant's daughter, H.L.H. ("Katie"),[1] first claimed that her father had inappropriately touched her at about 8:15 p.m. on 5 January 2008; Katie was six years old at the time. Katie told her mother, Deborah, who promptly called defendant, her husband of 13 and a half years, at work after putting Katie back into bed. Defendant and Deborah conferred over the phone about Katie's accusation, and afterward Deborah woke Katie and asked her where defendant had touched her. Katie responded that defendant had touched her "[i]n [her] private" when she was in kindergarten or first grade.[2]
Defendant came home from work after Deborah informed him over the phone that Katie had reiterated her prior statement. After a brief conversation, defendant and Deborah decided to ask Katie some questions together, and brought their daughter downstairs from her bed. Katie repeated that defendant had touched her in her private or "girl area." During the exchange, defendant tried to explain to Katie that he "would never do this," which caused Katie to respond, "Daddy, you know what I'm talking about."
Deborah took Katie to the Cary branch of Wake County Child Protective Services on 8 January 2008 to meet with Danielle Doyle, an investigator with the agency. Ms. Doyle took Katie, along with her grandmother and Katie's sister, to an interview room where Katie told Ms. Doyle that "she was upset because she had told her mom a secret . . . that her dad had touched her in . . . her girl area." After Katie made this particular statement, Ms. Doyle ceased asking Katie about the alleged abuse, and ended the interview shortly thereafter. Ms. Doyle then obtained consent from Deborah for Katie to have a child medical exam ("CME").
The CME was conducted on 11 January 2008 by Dr. Desmond Runyan, Professor of Pediatrics and Social Medicine at the University of North Carolina at Chapel Hill. At trial, Dr. Runyan was accepted as an expert in pediatrics and child abuse pediatrics. Dr. Runyan explained that the CME was a "nose to toes" check, which included both a general and genital exam. While examining Katie, Dr. Runyan found no abnormalities during either the general or genital exam, and he testified at trial that: (1) Katie's genital area contained no infections, tears, bruises, or discharge; and (2) Katie had a "normal hymen with normal structures" with no scars, tears, or bruises. Toward the end of Dr. Runyan's direct examination at trial, the State asked him whether he made "a recommendation for further evaluation" of Katie after conferring with Scott Snider, Katie's social worker and Clinical Coordinator at Duke Child Abuse and Neglect Medical Evaluation Clinic. Dr. Runyan stated over defendant's objection that he and Mr. Snider "recommended that [Katie] be referred to a mental health therapist with expertise in trauma treatment."
Scott Snider conducted a taped interview of Katie on 17 January 2008. Mr. Snider was accepted without objection at trial as an expert in the field of "[c]linical social work[] [and] diagnostic interviewing . . . of children[.]" The taped interview of Katie lasted for about an hour, and the interview was published to the jury at trial. During this interview, Katie disclosed details about the sexual abuse, and Mr. Snider had Katie demonstrate interactions between her and defendant with dolls.
After conducting the taped interview, Mr. Snider met with a team of medical staff to evaluate Katie's case, which included a review of the CME done by Dr. Runyan. Over defendant's objection at trial, the following exchange took place regarding a medical course of action for Katie:
[THE STATE:] Mr. Snider, . . . during the team staff meeting, did you either individually or together with the team recommend that [Katie] be referred for any more in-depth interviews?
A. Not  no, ma'am, not interviews for the purpose of finding out or clarifying what may have occurred.
Q. And what was your recommendation[?]
A. We . . . recommended that she be referred for mental health treatment, specifically . . . . with a clinician experienced in trauma treatment.
Mr. Snider explained that Katie was not recommended by the team for another more "in-depth" evaluation after the 17 January 2008 interview, because a team recommendation for a more comprehensive evaluation is generally made only in "cases where the allegations. . . may not be clear."
A grand jury returned true bills of indictment against defendant on 12 February 2008 for: one count of first-degree rape, three counts of first-degree statutory sexual offense, three counts of indecent liberties with a child, and one count of disseminating harmful materials to a minor. The indictments stated that the alleged offenses occurred between 9 June 2006 and 7 January 2008.
Defendant testified at trial, and denied each allegation of sexual contact alleged by the State. Katie also testified, and repeated her prior statements to the jury while using anatomical dolls for illustrative purposes. At the close of the State's case-in-chief, the trial court dismissed the charge of disseminating harmful materials to a minor.
On 18 August 2008, the jury found defendant guilty of three counts of first-degree sex offense and one count of first-degree rape. Judgment was arrested on all three of the first-degree sex offense verdicts, because the trial court concluded that the indictments were void based on State v. Scott, 237 N.C. 432, 75 S.E.2d 154 (1953) (judgment arrested where indictment referred to alleged victim as both "George Rogers" and "George Sanders"). Based on the sole charge and conviction of first-degree rape, the trial court sentenced defendant to a minimum of 300 months' and a maximum of 369 months' imprisonment with SBM for life post-release. Defendant properly gave oral notice of appeal.
Defendant raises two issues on appeal: (I) whether the trial court erred in allowing Dr. Runyan and Mr. Snider to testify concerning their treatment recommendations for Katie, because their expert opinions that further evaluation was not necessary and that Katie should be referred for mental health treatment "with a clinician experienced in trauma treatment" effectively vouched for Katie's credibility; and (II) whether defendant received ineffective assistance of counsel, because defense counsel failed to raise an ex post facto argument to the SBM order where the conduct alleged could have occurred prior to the enactment of the SBM statutes in North Carolina.

I.
Under our standard of review, the trial court is vested with broad discretion when admitting or excluding expert testimony, and will only be reversed upon a showing that this discretion was abused. State v. Washington, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), disc. review denied, 353 N.C. 396, 547 S.E.2d 427 (2001), disc. review denied, 610 S.E.2d 716 (2005). Abuse of discretion arises where the trial court's decision is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citing State v. Parker, 315 N.C. 249, 258, 337 S.E.2d 497, 503 (1985)).
The North Carolina Rules of Evidence provide that expert opinion is admissible where it helps the trial court "understand the evidence" or "determine a fact in issue[.]" N.C.R. Evid. 702(a) (2009). To determine if expert testimony should have been admitted at trial, we must examine whether the expert's opinion is based on his or her "special expertise[,] . . . that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." State v. Wilkerson, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978). As to the relevance of expert evidence at trial, "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." N.C.R. Evid. 405(a) (2009). In particular, a witness's character for truthfulness or untruthfulness may not be attacked or supported by expert opinion. N.C.R. Evid. 608(a) (2009); see State v. Heath, 316 N.C. 337, 341 S.E.2d 565 (1986) (new trial awarded where expert opinion admitted as to witness's propensity to lie).
Within the framework of these rules, it follows in the context of sexual offense cases with child victims that "the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (per curiam). However, Stancil does not preclude an expert from testifying, upon a proper foundation, "as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." Id. at 267, 559 S.E.2d at 789; see State v. Kennedy, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987) (expert opinion properly admitted showing "that the symptoms exhibited by the victim were consistent with sexual or physical abuse").
Defendant attempts to analogize this case to State v. Hall, 330 N.C. 808, 412 S.E.2d 883 (1992) and State v. Holloway, 82 N.C. App. 586, 347 S.E.2d 72 (1986), in which the defendants were granted new trials based on improperly admitted expert testimony. However, both cases are readily distinguishable.
In State v. Holloway, a pediatrician and a child psychologist testified "that in their opinion the child had testified truthfully" in alleging that a sexual offense had occurred. Holloway, 82 N.C. App. at 587, 347 S.E.2d at 73. This Court concluded that such testimony clearly violated Rules 405 and 608 of the North Carolina Rules of Evidence. Id.
Our Supreme Court in State v. Hall held that "evidence that a prosecuting witness has suffered a conversion reaction may be admitted for corroborative purposes to the same extent as evidence that she has suffered from post-traumatic stress syndrome." Hall, 330 N.C. at 823, 412 S.E.2d at 891. The Hall Court then awarded the defendant a new trial, and concluded that the expert opinions admitted at trial were improper absent a limiting instruction.
Dr. Sinal's testimony relating to M.M.'s treatment and condition largely addressed her conversion reaction to the alleged sexual abuse by her stepfather. Similarly, Dr. Haberkern's testimony indicated that M.M. suffered a conversion disorder, as evidenced by her paralysis, and from post-traumatic stress syndrome. The testimony of both witnesses, taken over defendant's repeated objections, was not limited by the trial court to any particular purpose. It was admitted for the substantive purpose of allowing the jury to infer that M.M. had in fact been raped. Because this evidence was not limited by the trial court to corroborating M.M.'s version of the events that transpired on 13 February 1988, we find error in its admission.
Id. at 823, 412 S.E.2d at 891-92.
In this appeal, we are not presented with a diagnosis as in Hall or an unlimited affirmation of Katie's veracity as in Holloway. Rather, defendant argues the treatment recommendations by Mr. Snider and Dr. Runyan created an inference for the jury that Katie was being truthful, which in turn created an inference to the jury that Katie had actually been sexually abused. This argument overlooks the ambiguity inherent in the experts' testimony. Referral to a trauma specialist does not confirm the guilt of defendantit only shows that a child has suffered some kind of trauma needing psychological counseling. The veracity of the child is not implicated in a clinical referral, because whether fantasy or true, a child reporting to adults the occurrences reported herein is in need of mental health counseling.
In addition, Mr. Snider testified at length prior to defendant's objection concerning the treatment recommendation of the team:
Q. And what would be some reasons that you would refer a child for a more in-depth [interview]?
A. [T]hose cases where the allegations. . . may not be clear. . . .
[Like a] child who might have disclosed something . . . not terribly clear to a professional . . . but then maybe . . . taking things back. And maybe family dynamics where there may be pressure on the child to not say something happened. Or I think, in general, complex cases where there may be more than one offender, more than one person doing something to a child.
So those types of evaluations are typically for very complex cases where  you know, a child may be sort of clearly uncomfortable in an interview, would be another example. A child who . . . clearly shows signs [that] . . . he or she may be scared to talk in the interview.
No part of the record indicates that Katie fit any of these examples warranting a further evaluation of her claims. Katie gave four interviews prior to meeting Mr. Snider and Dr. Runyan, and in each one she detailed the same story of abuse at the hands of defendant without any evident reservation. Given this evidence, Mr. Snider and Dr. Runyan were clearly justified in (1) determining that the statements made by Katie "were consistent with sexual or physical abuse[,]" and (2) referring her to receive appropriate treatment. Kennedy, 320 N.C. at 32, 357 S.E.2d at 366.
Defendant admits on appeal that Dr. Runyan did not elaborate at trial as to his reasons for recommending trauma therapy. Instead, it was Mr. Snider who testified at length about why Katie was not referred for a more in-depth interview. Prior to Mr. Snider's testimony on this issue, the trial court gave the following limiting instruction:
Members of the jury, as I instructed you earlier in the trial, this testimony is being presented only to corroborate the previous testimony given by [Katie]. This evidence is not substantive evidence of the crimes charged in this case, and you are to consider it only to the degree you find that it corroborates or does not corroborate the previous testimony given by [Katie].
Looking at the above instruction, even if we assume that the treatment recommendations were a de facto medical diagnosis through inferences reached by the jury, the trial court properly gave the jury a limiting instruction, which our Supreme Court explicitly approved in Hall, 330 N.C. at 823, 412 S.E.2d at 891-92. Thus, since the totality of the doctors' testimony related only to their recommendations after observing Katie's symptoms at length, their testimony was admissible and relevant to "determine a fact in issue[.]" Kennedy, 320 N.C. at 32, 357 S.E.2d at 366; Stancil, 355 N.C. at 266-67, 559 S.E.2d at 789; N.C.R. Evid. 702(a).
Accordingly, the trial court did not abuse its discretion in admitting the expert opinions of Mr. Snider and Dr. Runyan as to Katie's treatment. This assignment of error is overruled.

II.
To prove an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "that counsel's performance fell below an objective standard of reasonableness"; and (2) assuming that the first prong is proven, "that the error committed was so serious that a reasonable probability exists that the trial result would have been different." State v. Gainey, 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002), cert. denied, 537 U.S. 896, 154 L. Ed. 2d 165 (2002) (citing State v. Braswell, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985)).
In State v. Bare, __ N.C. App. __, 677 S.E.2d 518 (2009), this Court recently held that this State's SBM statutes are civil in nature, and that even a "retroactive application of the SBM provisions do not violate the ex post facto clause[s]" of either the United States or North Carolina Constitutions. Bare, __ N.C. App. at __, 677 S.E.2d at 531. As such, even if some of the incidents perpetrated by defendant in this case occurred prior to the enactment of the SBM statutes now challenged, the SBM order in this case fails to run afoul of the ex post facto clauses as interpreted by this Court.
State v. Bare shows that a different result would not have been reached at trial had an ex post facto argument been presented by defendant's trial counsel, and as a result, defendant's argument that trial counsel was ineffective is without merit. Gainey, 355 N.C. at 112, 558 S.E.2d at 488. This assignment of error is overruled.
No error.
Judges STEPHENS and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] This pseudonym will be used to refer to the minor child.
[2] The charges at trial later identified this time period as 9 June 2006 to 7 January 2008; Katie was between five and six years old during this time.