STATE v. JONES

[105 N.C. App. 576 (1992)]

---

STATE OF NORTH CAROLINA v. ANDRE DORAN JONES

No. 913SC634

(Filed 3 March 1992)

**Evidence and Witnesses § 2327 (NCI4th) — rape — post traumatic stress disorder — admitted as substantive evidence — error**

There was prejudicial error in a prosecution for second degree rape, second degree sexual offense, and crime against nature where the trial court admitted without a limiting instruction expert testimony that the victim had exhibited various behavioral and emotional reactions consistent with those exhibited by victims of PTSD and physical symptoms consistent with those of victims of rape crisis syndrome. Expert testimony relating to PTSD and variations such as rape trauma or crisis syndrome are admissible, but only for certain corroborative purposes and not as substantive evidence of rape.

**Am Jur 2d, Rape § 68.5.**

**Admissibility, at criminal prosecution, of expert testimony on rape trauma syndrome. 42 ALR4th 879.**

APPEAL by defendant from judgments entered 7 February 1991 in CARTERET County Superior Court by *Judge H. O. Phillips III.* Heard in the Court of Appeals 20 February 1992.

*Lacy H. Thornburg, Attorney General, by Edwin B. Hatch, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

The defendant appeals from judgments entered 7 February 1991, which judgments were based upon jury verdicts convicting the defendant of two violations of N.C.G.S. § 14-27.3 (1986), second degree rape, one violation of N.C.G.S. § 14-27.5 (1986), second degree sexual offense, and one violation of N.C.G.S. § 14-177 (1986), crime against nature.

The State's evidence tends to show the following: On the night of 6 July 1990, the victim, her husband, and some friends went to a trailer park in Morehead City, North Carolina where she and her friends drank a few beers. After a short period of time, her husband returned to their apartment. The victim remained with her friends for about an hour at which time her girlfriend offered to drive her home. She accepted. On their way home, they bought a six-pack of beer. Upon her arrival, the victim found that the door to her apartment was locked. Because she did not have a key to her home, she knocked on the door. Her husband, however, did not answer. Unable to enter her home at about 1:00 a.m., she sat outside and drank her beer with about six other people, one of whom was the defendant.

After about three or four hours, the victim got into an argument with the defendant. The defendant hit her with his fist above her right eye creating a cut which bled. She awakened her husband, got a butter knife out of the apartment, used it to open their truck, and got a stick out of it to hit the defendant. Her husband took the stick away from her and tried to talk to her. She would not listen because she was angry. Her husband became angry with the victim and went back inside their apartment without her. The defendant then handed the victim a towel for her cut. The defendant and the victim were the only people outside at this point. The victim calmed down as the two of them began to talk. The defendant asked her if she wanted to go to his apartment on the other end on the apartment complex and smoke some marijuana. She said that she would, and the two of them began walking to his apartment.

When they arrived at his apartment, the defendant opened the door. As soon as the victim entered the apartment, the defendant walked in behind her, put his hands over her mouth and nose, and pushed her back towards the bedroom. The victim struggled, but the defendant succeeded in getting the victim into the bedroom.

Once in the bedroom, the victim noticed another person standing by the door. The victim could not see his face because he was wearing a blanket or towel over his head. The defendant pushed her onto the bed, took off her pants, and held her hands over her head. The victim resisted his efforts, but he forced her legs apart and had intercourse with her. While he did, he forced the victim to have oral sex with the other man. After the defendant finished, the other man held the victim's hands above her head and had intercourse with her. When he finished, he left the apartment, and the defendant again had intercourse with the victim. When the defendant finished for the second time, he grabbed the victim's pants, cleaned himself with them, and then threw them at her. She dressed and went home. The defendant, however, followed her to her apartment. When she arrived, she told her husband that she had been raped. A few minutes later, the defendant knocked on the door. The victim opened the door, and the defendant told her that she had a phone call at someone's house. She shut the door and said to her husband, "that's the person."

.  Soon afterwards, she and her husband went to the Beaufort County Sheriff's Department, then to the Morehead City Police Department, and then to Carteret General Hospital. While at the hospital, a doctor and a nurse examined the victim and took various samples of bodily fluid for analysis. The State Bureau of Investigation examined these samples. Although they detected the presence of semen in vaginal swabs and other material, they were unable to determine the identity of the source of the semen. On 9 July 1990, the victim identified the defendant as her rapist from a photographic line-up at the Morehead City Police Department.

Constance Bell (Bell), a counselor and instructor at Carteret Community College, testified for the State. Bell received a bachelor's degree in English from the University of Charleston and a master's degree in counseling from West Virginia University in 1986. In late 1985, Bell served as an intern for the Family Service Agency (Agency) in Charleston, West Virginia. During this time, Bell began specializing in sexual assault crimes. In early 1986, Bell was hired as a staff counselor for the Sexual Assault Unit at the Agency where she counseled victims of sexual assaults. During her eight months as a staff counselor, Bell took several training courses and attended various seminars concerning sexual assault and abuse. In October, 1986, she moved to North Carolina and immediately volunteered with the Rape Crisis Unit (Unit) in Carteret County.

As a volunteer, Bell handled two to three cases of sexual assault per year. In 1990, she became a paid staff member as a counselor and consultant to the Unit primarily counseling sexual assault victims and their families. Bell also worked as an instructor at Carteret Community College where she designed and implemented a counseling program for inmates at the Newport Correctional Facility. Without objection, the State tendered Bell and the trial court qualified her as an expert in counseling victims of sexual assault.

Bell testified that on 7 July 1990, she was called to the Carteret General Hospital regarding a rape. When she arrived, she spoke with two police officers and then with the victim. She stayed with the victim during her physical examination and talked with her about the events of that morning. After that day, Bell met with the victim approximately 17 to 18 times for counseling. Each session lasted from one to one and one-half hours. Over an objection, Bell testified that she was familiar with post traumatic stress disorder (PTSD) and rape crisis syndrome. Over a continuing objection, Bell described the three phases of PTSD and the types of behavioral and emotional reactions exhibited by victims of PTSD. She then testified that in their counseling sessions, the victim had exhibited various behavioral and emotional reactions consistent with those exhibited by victims of PTSD. Specifically, Bell testified that consistent with a victim's reactions in the first phase of PTSD, this victim had been angry, defensive, upset, nervous, and aggressive and had felt powerless and fearful. Consistent with a victim's reactions in the second phase, this victim withdrew. Consistent with a victim's reaction in the third phase, this victim exhibited characteristic mood swings. Bell also described, over objections, the physical symptoms associated with victims of rape crisis syndrome and testified that this victim had exhibited various physical symptoms consistent with those of victims of the syndrome such as sleeplessness, loss of appetite, and nightmares.

The defendant testified at his trial. He admitted hitting the victim above the eye, but testified that he and the other man in the apartment had consensual intercourse with the victim.

The issue is whether the trial court erred in allowing as substantive evidence expert testimony that an alleged rape victim exhibited behavioral and emotional reactions consistent with those exhibited by victims of PTSD and that she also exhibited physical

symptoms consistent with those exhibited by victims of rape crisis syndrome.

Expert testimony relating to PTSD and variations of it such as rape trauma or crisis syndrome is admissible evidence in North Carolina. *State v. Hall*, 330 N.C. 808, 818-21, 412 S.E.2d 883, at 819, 412 S.E.2d at 889 (1992). This is so because these disorders have gained sufficient recognition to be considered as proper subjects for expert testimony. *Id.* This testimony may be either direct, i.e., that the victim suffers from PTSD, or indirect, i.e., that the victim exhibits symptoms consistent with those who suffer from PTSD. *Id.* at 817-22, 412 S.E.2d at 887-91. Because of the real danger of prejudice to the defendant and its tenuous probative value, however, a trial court may admit such evidence only for certain corroborative purposes and not as substantive evidence of rape. *Id.* at 821, 412 S.E.2d at 890; *State v. Huang*, 99 N.C. App. 658, 665-66, 394 S.E.2d 279, 284, *disc. rev. denied*, 327 N.C. 639, 399 S.E.2d 127 (1990). Accordingly, if the trial court determines that the proffered evidence meets the criteria of N.C.G.S. § 8C-1, Rules 403 and 702 (1988), the trial court may admit the evidence for purposes of corroboration. *Hall*, 330 N.C. at 822, 412 S.E.2d at 891. These purposes include, but are not limited to, corroborating the victim's story, explaining delays in reporting the alleged crime, and refuting the defense of consent. *Id.* When the trial court admits such evidence, however, it must "explain to the jurors the limited uses for which the evidence is admitted. In no case may the evidence be admitted substantively for the sole purpose of proving that a rape or sexual abuse has in fact occurred." *Id.*

In this case, Bell testified over repeated objections that the victim had exhibited various behavioral and emotional reactions consistent with those exhibited by victims of PTSD and that the victim had exhibited various physical symptoms consistent with those of victims of rape crisis syndrome. Accordingly, this evidence was admissible only for corroborative purposes. *Id.* The trial court, however, did not limit the use of this evidence to any particular purpose. Bell's testimony was apparently admitted for the substantive purpose of allowing the jury to infer that the victim had been raped. This was error. *Id.* at 823, 412 S.E.2d at 891-92. That the defendant did not request a limiting instruction as required by N.C.G.S. § 8C-1, Rule 105 (1988) does not preclude our review of the trial court's error. *See State v. Short*, 322 N.C. 783, 789, 370 S.E.2d 351, 354 (1988) (defendant must request desired lim-

iting instruction). This is so because at the time of the defendant's trial, testimony relating directly or indirectly to PTSD was admissible as substantive evidence. *State v. Hall*, 98 N.C. App. 1, 8, 390 S.E.2d 169, 173 (1990), *rev'd*, 330 N.C. 808, 412 S.E.2d 883 (1992).

Furthermore, this error prejudiced the defendant thereby entitling him to a new trial. N.C.G.S. § 15A-1443(a) (1988). The evidence at trial conflicted. The State's evidence consisted of the victim's out-of-court identification of the defendant as her rapist, her in-court testimony that she had been raped by the defendant, the corroborative testimony of two police officers, and Bell's testimony. The defendant, to the contrary, testified that he and the victim had consensual intercourse. As the State argued in its brief, Bell's testimony "was necessary for the jury's consideration in determining defendant's guilt or innocence of the offenses charged." On these facts, the defendant has shown a reasonable possibility that had the trial court not admitted Bell's testimony for substantive purposes, a different result would have been reached at the defendant's trial. *Id.*

Because we have determined that the defendant is entitled to a new trial, we do not address the defendant's remaining assignment of error.

New trial.

Judges JOHNSON and COZORT concur.