STATE OF NORTH CAROLINA v. JAMES HOWARD HENSLEY

NO. 9430SC256

(Filed 3 October 1995)

1. **Evidence and Witnesses § 2327 (NCI4th)— alleged sexual abuse—expert's testimony as to cause of post-traumatic stress syndrome—admissibility as substantive evidence prejudicial error**

In a prosecution of defendant for first-degree sexual offense, the trial court erred in allowing an expert in the field of clinical psychology to make a statement which did not name defendant specifically but which intimated without question that the cause of the alleged victim's post-traumatic stress syndrome was the sexual abuse inflicted by defendant, since this evidence was erroneously admitted as substantive evidence to prove that the victim suffered a sexual assault by anal penetration and that defendant committed the offense; furthermore, such error was prejudicial where the victim presented diverse versions of the date of the incident and indicated that he sought assistance during the alleged assault from a person who testified that she witnessed no impropriety; no physical evidence supported occurrence of the assault; and the State relied heavily on the medical testimony of the expert as to the victim's mental state following the alleged attack.

**Am Jur 2d, Expert and Opinion Evidence § 197.**

**Admissibility, at criminal prosecution, of expert testimony on rape trauma syndrome. 42 ALR4th 879.**

**2. Evidence and Witnesses § 2545 (NCI4th)— competency of child to testify—inquiry before jury—no plain error**

The trial court did not commit plain error in making an unrequested inquiry before the jury into the competency of an eleven-year-old alleged sexual abuse victim to testify.

**Am Jur 2d, Witnesses § 213.**

**Witnesses: child competency statutes. 60 ALR4th 369.**

**3. Criminal Law § 390 (NCI4th)— court's questions to victim—court's assisting victim down from stand—no expression of opinion**

The trial court's actions in asking the victim of alleged sexual abuse if he were doing all right and in assisting the eleven-year-old down from the stand so he would not stumble did not amount to an improper expression of opinion by the court on the credibility of the victim.

**Am Jur 2d, Trial §§ 299, 300.**

**4. Criminal Law § 375 (NCI4th)— denial of jury request to rehear alleged victim's testimony—trial court's improper expression of opinion**

Where defendant was accused of sexually abusing an eleven-year-old, and the jury indicated a desire to rehear the alleged victim's testimony, the trial court's denial of the jury's request because requiring the child to recount the testimony would be "very traumatic" and "injurious" to the child clearly indicated that the trial judge believed the minor child to have been a victim of sexual assault, and the trial court thus violated N.C.G.S. § 15A-1232.

**Am Jur 2d, Trial 280.**

**5. Rape and Allied Offenses § 73 (NCI4th)— alleged sexual assault—date of offense—no fatal variance between indictment and proof**

No fatal variance existed between the indictment and proof with regard to the date of the offense in a prosecution of defendant for sexual assault on a child where the indictment alleged that the offenses occurred on or about November 23, 1990; both the

victim and the investigating officer testified the offense took place at or around the date indicated; and though defendant brought out some inconsistencies regarding the date of the offense on cross-examination of the victim, a child's uncertainty as to time or date the offense was committed goes to the weight rather than the admissibility of the evidence.

**Am Jur 2d, Indictments and Informations § 67; Rape §§ 43, 52.**

Appeal by defendant from judgment entered 6 March 1992 by Judge Marvin K. Gray in Haywood County Superior Court. Heard in the Court of Appeals 10 January 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Frank G. Queen for defendant-appellant.*

JOHN, Judge.

Defendant was sentenced to a term of life imprisonment upon conviction of first degree sexual offense in violation of N.C. Gen. Stat. §14-27.4 (1993). He contends the trial court erred by: (1) allowing a psychologist to testify as to the cause of the alleged victim's post-traumatic stress disorder; (2) expressing an opinion on the credibility of the alleged victim; and (3) denying his motion to dismiss. We find certain of defendant's arguments to be valid and award a new trial.

The State's evidence tended to show the following: At the time of trial, the alleged victim (hereinafter "J.C.") was an eleven (11) year old male fourth grader. J.C. testified he knew defendant who lived with Barbara Franklin (Franklin) and her young son and teen-age daughter. Franklin was a friend of J.C's mother.

Sometime between 20 and 25 November 1990, J.C. spent the night at the Franklin home. At bedtime, defendant directed J.C. to sleep in the daughter's bedroom. J.C. stated he had gone to bed alone with his clothes off when defendant entered the room and told J.C. to roll over on his stomach. J.C. indicated he did as defendant requested, and then defendant "got on top of me" and "stuck his penis in my butt." J.C. told defendant "get off of me," but defendant replied "[n]o." J.C. called out to Franklin who came into the room and ordered defendant to "go to bed." Defendant commanded J.C. "not to tell anybody" and threatened "[i]f you tell anyone I did this to you, I'll whip you."

On cross-examination, J.C. was unsure about the time the incident allegedly occurred. Defendant elicited testimony to the effect that J.C.'s sister furnished him the dates "of November 20th through the 25th." In addition, J.C. revealed he may have told his mother the incident happened the previous summer, and then subsequently testified November was "wrong" and the events he recounted occurred "last summer."

Following a *voir dire* examination, the trial court determined Dr. Jay Fine would be permitted to testify as an expert in the field of clinical psychology, and further would be allowed to present his diagnosis that the alleged victim suffered from post-traumatic stress disorder. The court also ruled Dr. Fine might relate his opinion as to the cause of that condition, stating "[t]hat's going to be for the jury to evaluate."

Dr. Fine thereafter testified he first examined J.C. on 1 March 1991 at the recommendation of the Haywood County Department of Social Services. He saw J.C. on several occasions following the initial interview. Dr. Fine's "clinical opinion and . . . clinical diagnosis" of J.C. consisted of "three diagnoses": sexual abuse by history, adjustment disorder with mixed disturbance of emotions and conduct, and post-traumatic stress disorder. When questioned about the possible cause of J.C.'s post-traumatic stress disorder, Dr. Fine replied the cause "would be the sexual abuse that he received, was the victim of, specifically anal penetration."

Kenneth Moore, Chief of Police of Hazelwood, North Carolina, reported he received a statement from J.C. on 13 February 1991. Pertinent details included J.C.'s account that the alleged assault occurred between 20 November and 25 November 1990, and that defendant "got on top of me and stuck his privates in my butt hole and it hurt real bad."

At the close of the State's evidence, defendant moved to dismiss on grounds of a fatal variance between the date alleged on the indictment and the proof exhibited at trial. The trial court denied defendant's motion.

J.C's mother was called as a witness by defendant. She testified she first learned of the allegations from J.C. in "October or November" of 1990 and consequently notified Social Services. J.C. told her the incident had occurred the previous summer.

**STATE v. HENSLEY**

[120 N.C. App. 313 (1995)]

Katherine Scott, Child Protective Services Investigator with the Haywood County Department of Social Services, related she commenced her investigation on 11 February 1991 by interviewing J.C. at his home. J.C. indicated defendant woke him up by getting on top of him, told J.C. to be quiet and "felt his privates." Defendant then turned him over and "stuck it in him."

Barbara Franklin testified defendant never slept in her daughter's room and denied finding defendant "at any time" in the bedroom with J.C. She further maintained she had never witnessed any improper behavior between defendant and J.C.

At the close of all of the evidence, the trial court denied defendant's renewed motion to dismiss. Following conviction and sentence, defendant appealed to this Court.

## I.

[1] Defendant first contends the trial court committed reversible error by allowing Dr. Fine to testify J.C.'s post-traumatic stress disorder was caused by "sexual abuse that he received, was the victim of, specifically anal penetration." Defendant specifically maintains this evidence was not allowed as corroborative of J.C.'s testimony, but was received as substantive evidence. In any event, defendant continues, no limiting instruction was given by the trial court. Defendant's argument has merit.

In *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992), our Supreme Court resolved the issue surrounding testimony that a prosecuting witness in a sexual assault trial is suffering from post-traumatic stress syndrome. The Court held such evidence may be admitted for certain corroborative purposes. *Id.* at 821, 412 S.E.2d at 890. In reaching this conclusion, the Court reasoned:

> When the complainant testifies at trial that [he or] she has been sexually assaulted, the jury is given the unique and exclusive opportunity to access the credibility of [the] story, both on direct and cross examination. This is accomplished in a manner which is not usually available to the treating physician who generally assumes the veracity of the patient's account in formulating a diagnosis and treatment. The jury is also able to evaluate [the] story in light of other evidence adduced at trial. These factors ameliorate the lack of critical inquiry by therapists and may put the jury in an improved position to determine the complainant's credibility. However, jurors may not completely understand cer-

tain post-assault behavior patterns of a sexual assault victim and . . . may entertain other misconceptions about the often bewildering nature of the crime of rape. Testimony that the complainant suffers from post-traumatic stress disorder may therefore cast light onto the victim's version of events and other, critical issues at trial. For example, testimony on post-traumatic stress syndrome may assist in corroborating the victim's story, or it may help to explain delays in reporting the crime or to refute the defense of consent.

*Id.* at 822, 412 S.E.2d at 890-91.

The court cautioned, however, that the trial court should always balance the probative value of such evidence against its prejudicial impact under Rule 403 of the Rules of Evidence, and also determine whether it would assist the trier of fact under Rule 702. *Id.* at 822, 412 S.E.2d 891. Finally, the court admonished that this evidence may "[i]n no case . . . be admitted substantively for the sole purpose of proving that a rape or sexual abuse has in fact occurred." *Id.*

In *State v. Huang*, 99 N.C. App. 658, 394 S.E.2d 279, *disc. review denied*, 327 N.C. 639, 399 S.E.2d 127 (1990), the defendant was charged with attempted second degree rape and assault on a female. *Id.* at 659, 394 S.E.2d at 280. The prosecution presented expert testimony from Dr. Susan Roth, Ph.D., who treated the victim after the alleged attack. *Id.* at 661, 394 S.E.2d at 282. Dr. Roth defined post-traumatic stress disorder and testified in detail as to the symptoms exhibited by the victim. *Id.* at 661-62, 394 S.E.2d at 282. Dr. Roth went on to explain to the jury the trauma as felt by the victim:

In [the victim's] case in particular, she became very fearful both of *Mr. Huang* and also just more generally, she felt very vulnerable in the world. She also had a sense of real loss about the relationship with *Mr. Huang's* wife. . . . One does not expect a *friend* to attack you, to violate your integrity, to violate your space. . . . So, when it happens at the hands of a *friend*, it violates the sense of trust even more. I think *in terms of justice* what is very important to understand is that [the victim] spent a lot a[sic] time trying to understand how could this have happened, *how could something this unjust* have happened and this again is all part of the psychological process you see in response to a traumatic event.

*Id.* at 662, 394 S.E.2d at 282.

The dispositive issue on appeal was whether Dr. Roth's testimony regarding post-traumatic stress disorder was admissible. This Court held "that Dr. Roth was qualified [as an expert], that her testimony was helpful to the jury, that it was based on a reliable scientific method, that it was relevant, and that it did not violate the rule prohibiting expert testimony on a witness's credibility." *Id.* at 665, 394 S.E.2d at 284.

However, we concluded that "[t]he probative value of Dr. Roth's testimony was outweighed by the danger of unfair prejudice and therefore its admission violated Rule 403." *Id.* We held "Dr. Roth explicitly implicated defendant in her testimony regarding the effects of the alleged sexual assault on [the victim]," *id.* at 666, 394 S.E.2d at 284, and noted the implication outraged the jurors "about the injustice of defendant's alleged act." *Id.* As such, the testimony was erroneously admitted and was clearly prejudicial to defendant requiring he be given a new trial. *Id.; see also State v. Wilkerson,* 295 N.C. 559, 570, 247 S.E.2d 905, 911 (1978) (physicians should not be permitted to testify battered child syndrome suffered by victim "was in fact caused by any particular person or class of person" since witnesses are in no better position to have such opinion than the jury).

In the case *sub judice,* Dr. Fine's statement, while not mentioning defendant's name specifically, without question intimates the cause of the alleged victim's post-traumatic stress syndrome was the sexual abuse inflicted by *defendant.* This testimony was thus erroneously admitted as substantive evidence to prove J.C. suffered a sexual assault by anal penetration and that defendant committed the offense. *See Hall,* 330 N.C. at 822, 412 S.E.2d at 891.

However, not every error committed by the trial court requires a new trial. "The defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial." *State v. Alston,* 307 N.C. 321, 339, 298 S.E.2d 631, 644 (1983) (citation omitted), and the burden of showing prejudice is on the defendant. *Id.* Defendant must demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a) (1988).

The evidence presented at trial somewhat conflicted. J.C. presented diverse versions of the date of the incident. He also indicated seeking assistance from Franklin during the alleged assault, while Franklin insisted she witnessed no impropriety. Moreover, no physi-

cal evidence supported occurrence of the assault. The State relied heavily on the medical testimony of Dr. Fine as to J.C.'s mental state following the alleged attack. On these facts, we believe defendant has demonstrated the reasonable possibility of a different result at trial absent admission of Dr. Fine's opinion as to the cause of J.C.'s post-traumatic stress disorder. *See State v. Jones*, 105 N.C. App. 576, 581, 414 S.E.2d 360, 363 (1992) (defendant entitled to new trial where evidence conflicted and substantive evidence of post-traumatic stress disorder erroneously admitted).

Moreover, assuming *arguendo* that defendant failed to meet his burden of showing prejudice, we nevertheless find further error committed by the trial court which, combined with that set out above, mandates a new trial.

## II.

Defendant next maintains the trial judge's statements and conduct towards the victim during trial "constituted an expression of opinion about the credibility of the complaining witness, to the defendant's prejudice." We find one of defendant's arguments persuasive.

N.C. Gen. Stat. § 15A-1222 (1988) provides:

The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury.

Thus, trial judges

must be careful in what they say and do because a jury looks to the court for guidance and picks up the slightest intimation of an opinion. It does not matter whether the opinion of the trial judge is conveyed to the jury directly or indirectly as every defendant in a criminal case is entitled to a trial before an impartial judge and an unbiased jury.

*State v. Sidbury*, 64 N.C. App. 177, 178-79, 306 S.E.2d 844, 845 (1983) (citing *State v. Whitted*, 38 N.C. App. 603, 248 S.E.2d 442 (1978)). "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). "[I]n a criminal case it is only when the jury may reasonably infer from the evidence before it that

the trial judge's action[s] intimated an opinion as to . . . a witness's credibility that prejudicial error results." *Id.* (citation omitted).

**[2]** Defendant first challenges the court's *"ad hoc* and unrequested inquiry" into the victim's competency to testify:

THE COURT: [J.C.], how old are you?

THE WITNESS: Eleven.

. . . .

THE COURT: And, what grade are you in in school?

THE WITNESS:: Fourth.

THE COURT: Has anybody ever talked to you about telling the truth?

THE WITNESS: Yes.

THE COURT: Do you know what happens to you when you don't tell the truth?

THE WITNESS: Yes.

THE COURT: What is it?

THE WITNESS: You get punished.

THE COURT: The Court's going to find this witness competent to testify.

Rule 104(c) of the North Carolina Rules of Evidence requires *voir dire* inquiry into the competency of a witness to be conducted outside the presence of the jury only "when the interests of justice require." In the case *sub judice,* defendant interposed no objection to the court's examination before the jury, and the questions in no way constitute plain error. N.C.R. App. P. 10(b)(1) and 10(c)(4); *see also State v. Baker,* 320 N.C. 104, 112, 357 S.E.2d 340, 344 (1987) (court's *voir dire* examination before jury of nine-year-old victim's understanding of duty to tell the truth not error particularly when defendant made no request that hearing be held outside presence of jury). Defendant's first argument is baseless.

**[3]** Next, defendant cites the following portions of the trial proceedings as error:

THE COURT: [J.C.], now it comes time for the lawyer over here, named Mr. Patton, to ask you some questions. Will you listen very closely to his questions and answer his questions, if you can?

THE WITNESS: Yes.

THE COURT: And if you don't know the answer, just tell him you don't know.

THE WITNESS: Yes.

THE COURT: Will you do that?

THE WITNESS: (MOVED HEAD UP AND DOWN.)

THE COURT: Thank you. All right, Mr. Patton.

Near the close of counsel's cross-examination, the court made the following inquiry:

THE COURT: How are you coming along over there, [J.C.]? Are you doing all right?

THE WITNESS: (NODDED HEAD UP AND DOWN.)

THE COURT: Okay.

Further, upon conclusion of the witness' testimony, the trial judge observed J.C. had wrapped his foot around the leg of the witness chair and that it appeared he was going to stumble. The judge stood from his seat, took J.C. by the hand, and assisted him from the stand.

Defendant failed to object to any of the foregoing actions or statements of the trial court. N.C.R. App. P. 10(b)(1). In addition, he has failed to demonstrate how he was prejudiced thereby. Given the strained circumstance of a young child appearing as the prosecuting witness in a sexual assault case, we cannot characterize the above-described conduct as anything more than the court's effort to assist J.C. in being at ease, thereby promoting the latter's ability to recount the facts and testify truthfully. *See State v. Reeves*, 337 N.C. 700, 727, 448 S.E.2d 802, 814 (1994) (allowing five-year-old to sit in stepmother's lap while testifying not error); *State v. Cook*, 280 N.C. 642, 648, 187 S.E.2d 104, 108-09 (1972) (no error in permitting victim's mother to remain in courtroom while child testified in order to give comfort "in strange and, at best, frightening circumstances to a little girl testifying" in rape case).

[4] However, defendant also assigns error to certain of the trial court's instructions to the jury. After the jury retired to begin deliberations, it indicated a desire to re-hear J.C.'s testimony. The jury was returned to the courtroom and received the following response from the court:

You will recall, members of the jury, that when I gave you instructions before you went to the jury room that one of the things that I told was that you had to remember, remember and consider and weigh, all of the evidence. That's your duty, collectively, as a jury, to remember and consider and weigh all of the evidence, including that of the victim.

In addition to that, members of the jury, as you know from being here two or three days, the victim is a young person. And it could be very traumatic to him and injurious to him for him to have to recite that again. It would take some time for the court reporter to recount all of his testimony verbatim for you, or type it up.

And, so, in my discretion, I'm not going to honor your request. I'm simply going to instruct you again that you must remember and weigh and consider all of the evidence that you've heard in this case.

Defendant maintains this instruction "gives the unmistakable impression that Judge Gray himself believed the testimony of the complaining witness, and that Judge Gray himself believed that the complaining witness was a victim of this sexual assault." We are compelled to agree.

N.C. Gen. Stat. § 15A-1232 (1988) states:

In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence.

The slightest intimation from a judge as to the strength of the evidence or as to the credibility of the witness "will always have great weight with the jury, and great care must be exercised to insure that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial." *State v. Grogan*, 40 N.C. App. 371, 374, 253 S.E.2d 20, 22 (1979) (citation omitted).

While undoubtedly unintended, the inescapable implication of the court's reply to the jury's request is that the trial judge believed the minor child to have been a victim of sexual assault. This arises from the court's suggestion that recounting his testimony would be "very traumatic" and "injurious" to J.C. The court therefore violated G.S. § 15A-1232.

STATE v. HENSLEY

[120 N.C. App. 313 (1995)]

Although the court's statement standing alone arguably might not constitute prejudicial error, see *State v. Holden*, 280 N.C. 426, 430, 185 S.E.2d 889, 892 (1972) (not every improper remark by a trial judge is of such harmful effect as to require a new trial), viewing it in light of the error allowing Dr. Fine's testimony leaves no option but to award a new trial. *See State v. White*, 331 N.C. 604, 616, 419 S.E.2d 557, 564 (1992) (while defendant failed to show either of court's rulings, considered individually, were sufficiently prejudicial to require new trial, cumulative effect may have deprived defendant of his fundamental right to a fair trial).

### III.

**[5]** Although we grant defendant a new trial, it remains necessary to address his contention the trial court erred by failing to allow his motion to dismiss at the close of all the evidence. *See* N.C.R. App. P. 10(b)(3) ("If a defendant's motion to dismiss . . . shall be sustained on appeal, it shall have the force and effect of a verdict of 'not guilty' as to such defendant."). Defendant asserts the presence of a fatal variance between the indictment and the proof offered at trial with respect to the date of the alleged offense. This argument cannot be sustained.

In *State v. Everett*, 328 N.C. 72, 399 S.E.2d 305 (1991), our Supreme Court reviewed the rules regarding proof of temporal specificity:

Generally, an indictment must include a designated date or period within which the offense occurred. N.C.G.S. § 15A-924(a)(4) (1990). However, the statute expressly provides that "[e]rror as to a date or its omission is not ground for dismissal of the charges or for reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice." *Id.* Also, "[n]o judgment upon any indictment . . . shall be stayed or reversed for . . . omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly." N.C.G.S. § 15-155 (1990).

*Id.* at 75, 399 S.E.2d at 306.

In cases of sexual assaults on children, the requirements are even less severe:

We have stated repeatedly that in the interests of justice and recognizing that young children cannot be expected to be exact

STATE v. HENSLEY

[120 N.C. App. 313 (1995)]

regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence. Nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time for the offense where there is sufficient evidence that defendant committed each essential act of the offense.

*State v. Wood,* 311 N.C. 739, 742, 319 S.E.2d 247, 249 (1984) (citations omitted). "Unless the defendant demonstrates that he was deprived of his defense because of lack of specificity, this policy of leniency governs." *Everett,* 328 N.C. at 75, 399 S.E.2d at 306 (citations omitted).

The indictment herein alleged the offenses transpired "[o]n or about November 23, 1990." The State's evidence comported with this allegation since both J.C. and Chief Moore testified the offense took place at or around the date indicated. While defendant during cross-examination of J.C. brought out some inconsistencies.regarding when the assault actually took place, "a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence." *Wood,* 311 N.C. at 742, 319 S.E.2d at 249 (citations omitted). Based on the foregoing and in light of the lenient policy towards temporal discrepancies in child sexual assault cases, we hold no fatal variance existed between the indictment and the proof presented at trial. In any event, we note defendant suffered no prejudice as his defense was based upon complete denial of the charge rather than upon alibi for the date set out in the indictment. *See State v. Effler,* 309 N.C. 742, 750, 309 S.E.2d 203, 208 (1983).

New trial.

Judges COZORT and MARTIN, JOHN C. concur.