IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1110

Filed: 6 October 2020

Forsyth County, Nos. 18 CRS 114, 51027

STATE OF NORTH CAROLINA

v.

JOHN FITZGERALD AUSTIN

Appeal by defendant from judgment entered 8 May 2019 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 11 August 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Chris D. Agosto Carreiro, for the State.*
>
> *Jarvis John Edgerton, IV, for defendant-appellant.*

BRYANT, Judge.

Where the trial court's instructions to the jury left the determination of whether defendant John Fitzgerald Austin had committed an assault entirely for the jury, there was no impermissible expression of opinion by the trial court. Accordingly, we hold no error.

On 27 August 2018, a Forsyth County grand jury indicted defendant on charges of assault on a female and habitual misdemeanor assault under N.C. Gen. Stat. § 14-33.2. The matter came on for trial during the 6 May 2019 session of Forsyth County Superior Court before the Honorable L. Todd Burke, Judge presiding.

The evidence presented at trial tended to show the following. Defendant was in a dating relationship with Claudette Little (Claudette) and had lived with her since January 2017. On the evening of Saturday, 7 January 2018, Claudette and her cousin went to a night club/lounge to support Claudette's younger brother, who was the DJ that night. When Claudette left her residence, defendant was asleep. Shortly after she arrived at the club, Claudette received a phone call from defendant. Claudette informed defendant where she was using her cell phone's "face-chat" to show defendant her surroundings. Defendant repeatedly indicated that "he didn't care, you know, what [she] was doing" and accused her of "doing something." Claudette invited defendant to come out and join her. An hour later, defendant appeared at the lounge with a friend.

Claudette joined defendant and she noted that he appeared to be in "a daze"— he was just "sitting looking into space . . . . He was somewhere else. Like he was just on something." Seeing defendant in a daze, "[Claudette] didn't want to deal with it, whatever it was." Claudette told defendant's friend not to bring defendant back to her residence that night. Defendant asked if Claudette was leaving with him and Claudette responded that she was not going anywhere with him that night. Defendant left the lounge half an hour after he arrived. Claudette remained at the club until it closed at 2:00am.

Claudette's cousin drove her home at 2:30 am with her brother following behind "[just] to see if everything was okay." Though defendant was not at Claudette's apartment when they arrived, Claudette's brother and cousin stayed with Claudette for an hour. "I told them, I say, 'I'm okay. [Defendant]'s not -- if he ain't in here by now, he's not coming." So, her cousin and brother left, and Claudette went to bed.

Claudette awoke to find defendant standing over her, yelling.

> A. He was like, "oh, you like to go to clubs." And then he said, 'oh, yeah, you like making Jell-O shots. You like this.' I mean, he was saying so much to me." . . .
>
> . . . .
>
> And I kept on saying, "what are you talking about? Why are you doing this? And then he just took his belt off and he wrapped it around his hand, saying, "you want to know what I'm talking about, you want to know what I'm talking about," (demonstrating).
>
> Q. What happened then?
>
> A. And, you know, I just went to leap for him and we got to struggle. He took the -- he hit me upside the head with the belt on. His fist hit me. I fell back on the bed like that (demonstrating). And then he got over top of me and say, "you think I'm playing, you think I'm playing."

Claudette testified that defendant struck the right side of her face with his fist. Defendant then laid on the bed, told Claudette to take off her clothes and "get on top of him." On his demand, Claudette performed fellatio on defendant.

A.     Then after that, he -- I was -- started crying.  He took the belt from around his hand and put it around his neck.

. . . .

He put the belt around his back [sic] and he pulled it, and he pulled it.  And I kept crying.  And I said, "don't, don't." And he said, "I'll just kill myself, just kill myself."  And I was like, "No.  Please, don't, don't do this.  I love you.  Don't do this.  Don't do this."  I kept crying and crying right.  Then he did like this (demonstrating) and he said, "Yeah, that's what I thought."

Q.  Why were you saying that to him if he had just hit you previously?

A.  Anything so that he -- to keep him calm.  I didn't want him to keep hitting on me.  I didn't want him -- I didn't know what was going on, what he was doing.  Anything to keep him – I just cried "I love you.  Don't do this.  Don't do this."  I cried. Cause I didn't know if he was getting a reaction from me, to see if I still cared or not.

Q.  How many times did he hit you, to that point?

A.  I can't even count them.

Claudette lay down next to defendant and waited for him to fall asleep before she got up, got dressed, and left the apartment.

At the close of the State's evidence, defendant moved to dismiss the charge against him and indicated that he would not present any evidence.  The trial court denied the motion to dismiss.

The trial court instructed the jury on the charges of assault on a female and habitual misdemeanor assault.  The court soon adjourned for the day.  The next

morning, at the jury's request, the court again instructed the jury on the charges.

Thereafter, the jury returned guilty verdicts against defendant on both charges.

Defendant pled guilty to attaining habitual felon status. The trial court entered a

consolidated judgment against defendant on the charges of assault on a female,

habitual misdemeanor assault, and attaining habitual felon status. Defendant was

sentenced to an active term of 103 to 136 months. Defendant appeals.

---

On appeal, defendant argues the trial court erred by (1) communicating to the

jury during its jury instructions that it believed an assault had occurred and (2)

responding to a jury question regarding a conflict in the State's evidence by

instructing the jury to accept the trial court's assertion as to when an alleged prior

conviction had occurred. We disagree.

*Standard of Review*

Before this Court, defendant contends that the trial court violated a statutory

mandate, codified within N.C. Gen. Stat. §§ 15A-1222 and 15A-1232, by improperly

expressing its opinion to the jury. However, before the trial court, defendant failed

to raise a challenge to the court's jury instructions.

> The statutory prohibitions against expressions of opinion
> by the trial court contained in N.C.G.S. § 15A-1222 and
> N.C.G.S. § 15A-1232 are mandatory. A defendant's failure
> to object to alleged expressions of opinion by the trial court
> in violation of those statutes does not preclude his raising
> the issue on appeal. *See State v. Ashe*, 314 N.C. 28, 331 S.E.

2d 652 (1985); *State v. Bryant*, 189 N.C. 112, 126 S.E. 107 (1925) (decided under former N.C.G.S. § 1-180).

*State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). Thus, defendant is not precluded from raising these arguments before this Court.

> It is well settled that a trial judge may not express an opinion as to the guilt or innocence of a criminal defendant, the credibility of a witness, or any other matter which lies in the province of the jury. G.S. 1-180; *State v. Freeman*, 280 N.C. 622, 187 S.E.2d 59 (1972); *State v. Owenby*, 226 N.C. 521, 39 S.E.2d 378 (1946). An expression of judicial leaning is absolutely prohibited regardless of the manner in which it is expressed, and this is so even when such expression of opinion is inadvertent. *State v. Atkinson*, 278 N.C. 168, 179 S.E.2d 410 (1971).

*State v. Hudson*, 295 N.C. 427, 434–35, 245 S.E.2d 686, 691 (1978).

> Even so, every such impropriety by the trial judge does not result in prejudicial error. Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant. *State v. Brady*, 299 N.C. 547, 264 S.E. 2d 66 (1980); *State v. Greene*, 285 N.C. 482, 206 S.E.2d 229 (1974). Thus, in a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results. *State v. Yellorday*, 297 N.C. 574, 256 S.E.2d 205 (1979).

*State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore*, 340 N.C. 119, 155, 456

S.E.2d 789, 808 (1995) (citations omitted) (citing *Blackstock*, 314 N.C. 232, 333 S.E.2d 245); *see also State v. Summey*, 228 N.C. App. 730, 735–36, 746 S.E.2d 403, 408 (2013) (quoting *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248).

## *Analysis*

Defendant argues that the trial court violated General Statutes, sections 15A-1222 and 15A-1232. Pursuant to section 15A-1222 ("Expression of opinion prohibited"), "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2019). Pursuant to section 15A-1232 ("Jury instructions; explanation of law; opinion prohibited"), "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." *Id.* § 15A-1232; *see also State v. Cuthrell*, 235 N.C. 173, 174, 69 S.E.2d 233, 234 (1952) ("The rule is that the trial court in charging a jury may not give an instruction which assumes as true the existence or nonexistence of any material fact in issue." (citations omitted)).

In *Young*, 324 N.C. 489, 380 S.E.2d 94, the defendant argued that a trial court's statements before a jury amounted to an impermissible expression of opinion in violation of General Statutes, sections 15A-1222 and 15A-1232. The trial court's instructions contained the statement "*if you find* that the defendant made that

confession, *then* you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give it." *Id.* at 498, 380 S.E.2d at 99. Our Supreme Court reasoned that the instruction made clear that "although there was evidence tending to show that the defendant had confessed," *the determination as to whether the defendant had actually confessed was "entirely for the jury." Id.* (emphasis added) Thus, there was no error. *See also State v. Cannon*, 341 N.C. 79, 90–91, 459 S.E.2d 238, 245 (1995) (holding the defendant's argument that the trial court impermissibly expressed an opinion had no merit, citing *Young*, 324 N.C. 489, 380 S.E.2d 94, in support of its rationale).

1

Here, defendant argues that during the jury instructions, the trial court indicated to the jury multiple times that it believed an assault had occurred. Defendant argues that "[t]he trial court charged the jury not with deciding *whether* an assault occurred, but, instead, with determining 'what the assault was.'" Defendant pointed to the following instruction on assault on a female:

> [THE COURT:] [D]efendant, a male person, has been charged with assault on a female. For you to find the defendant guilty of this offense, the State must prove three days beyond a reasonable doubt:
>
> First, that the defendant intentionally assaulted the alleged victim. It has been described in this case by the prosecuting witness that the defendant hit her upon her head, that he hit her on her arms, about her body.

> You are the finders of fact. You will determine what the assault was, ladies and gentlemen. The Court is not telling you what it is, I'm just giving you a description. And there was also testimony by the witness that the defendant asked her to perform, by force, another act, which could be considered an assault. But you will determine what the assault was. I'm not telling you what it is. And if what I'm saying is the evidence and your recollection is different from what I say, you still should rely upon your recollection of the evidence, as to what the assault is that has been testified to in this case.

We note that the trial court's substantive instruction on assault on a female began as follows: "Now ladies and gentlemen in this case you will be determining *whether* the defendant is guilty or not guilty of assault on a female by a male person, and guilty or not guilty of habitual misdemeanor assault." (emphasis added). We further note that the trial court, at the request of the jury, instructed again on the charge of assault on a female on the second day of jury deliberation. In its second instruction, the trial court stated the following:

> You requested specifically the substantive instructions for assault on a female and habitual misdemeanor assault.
>
> Ladies and gentlemen, I will define, again, first. An assault does not necessarily have to involve contact, it could be putting someone in fear or imminent apprehension of contact, threatening contact. . . . In this case the particular assault has been described as hitting the prosecuting witness, Ms. Claudette Little, about her body multiple times. Yesterday I mentioned some other act based upon the testimony at the trial, that she stated that she was forced to perform. But for purposes of this trial, you do not have to consider that, just that it is alleged that she was hit about her body multiple times. Whether that -

> - whatever part of the body that may be, head, face, torso, arms, legs, that will be for you to determine as you are the finders of fact.

Following this definition of assault, the trial court instructed the jury on the charge of assault on a female in accordance with North Carolina Pattern Jury Instruction for criminal law, 208.70 ("Assault on a Female by a Male Person"). N.C.P.I. Crim - 208.70 (2015).

Upon review of the record and the totality of the circumstances, we hold that the trial court's instruction to the jury made clear that the determination of *whether* the evidence showed defendant had committed an assault upon Claudette was left entirely for the *jury*. Accordingly, we overrule defendant's argument.

2

Defendant also contends the trial court's statements in response to a jury question about reasonable doubt in the context of evidence relevant to defendant's habitual misdemeanor assault charge further violated General Statutes, section 15A-1232 ("Jury instructions; explanation of law; opinion prohibited") (set out above). Defendant argues "the jury likely inferred that the trial court believed that State's evidence established that the date of [defendant's prior conviction for assault on a female] was March 9, 2010." Defendant argues the trial court's statement "created more than an inescapable implication, it amounted to improper judicial notice of a fact supporting an element of the offense." We disagree.

In support of his argument, defendant cites *State v. Hensley*, 120 N.C. App. 313, 462 S.E.2d 550 (1995), where this Court held that the trial court implicitly endorsed a witness's testimony as truthful.

> While undoubtedly unintended, the inescapable implication of the court's reply to the jury's request [to rehear the testimony of a witness] is that the trial judge believed the minor child to have been a victim of sexual assault. This arises from the court's suggestion that recounting his testimony would be "very traumatic" and "injurious" to [the witness]. The court therefore violated G.S. § 15A–1232.

*Id.* at 323, 462 S.E.2d at 556. While a new trial was granted in *Hensley*, the trial court's error in its response to the jury's request was not the sole basis. In *Hensley*, a clinical psychologist, testifying as an expert responded to a question "about the possible cause of [the witness]'s post-traumatic stress disorder, . . . [and] replied the cause 'would be the sexual abuse that [the witness] received, [the witness] was the victim of, specifically anal penetration.' " *Id.* at 316, 462 S.E.2d at 552. This Court stated it was "le[ft with] no option but to award a new trial." *Id.* at 324, 462 S.E.2d at 556. *See also State v. Sidbury*, 64 N.C. App. 177, 179, 306 S.E.2d 844, 845 (1983) (holding that if a trial court's humorous remark made in regard to a "hotly contested issue in the case" was interpreted by any juror "as questioning the credibility of [the] defendant's evidence, that was one juror too many," and a new trial was required). We find the facts here distinguishable.

Here, defendant was indicted on the charge of habitual misdemeanor assault, in violation of General Statutes, section 14-33.2.

> A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33 and causes physical injury, or G.S. 14-34, and has two or more prior convictions for either misdemeanor or felony assault, with the earlier of the two prior convictions occurring no more than 15 years prior to the date of the current violation.

N.C. Gen. Stat. § 14-33.2 (2019).

Defendant's current violation occurred on 7 January 2018. At trial, an assistant clerk who was division supervisor over district criminal records in the Forsyth County Clerk's Office, testified to conviction records maintained by the Clerk's Office. She testified to a certified judgment for assault on a female that was entered against defendant on 5 June 2017. The judgment was introduced and admitted into evidence. As for conviction records more than five years old, the clerk testified that those records were purged and stored on a computer system. The records recovered from the system were accompanied by a "purge letter" and a printout related to the charge and conviction. The State introduced its Exhibit 11, a purge letter and a printout, as "a certified true copy of records kept by the Clerk of Court." The printout reflected that a second judgment for assault on a female had been entered against defendant on 9 March 2010. State's Exhibit 11 was entered into evidence. The evidence of defendant's prior convictions was published to the jury.

After the close of the evidence and following the trial court's jury charge, the jury presented the court with a question.

> THE COURT: All right. [Foreperson], you have a question, or you've written a question on behalf of the jurors:
>
> "Do we have to be beyond a reasonable doubt on count two. And there's a typo on the document."
>
> What document are you referring to?
>
> . . . .
>
> [FOREPERSON]: The purge document from 2010.
>
> THE COURT: All right. So I -- you didn't say what it was, you just said there's a typo on there. What are you referring to?
>
> [FOREPERSON]: On the page the dates are wrong, the cover page.
>
> THE COURT: The cover page has one date and the judgment has another date.
>
> [FOREPERSON]: Yes, sir.
>
> THE COURT: Well, the judgment is what you are to look at. Now, if you think that because there is an error on the cover page that potentially there could be an error in the other document that the Court is instructing you to abide by then that's just part of the proof, has the state met their burden. I'm not saying that they have not met their burden by that. But if that's – that's how you may consider that. But you've already said there's a typo and I don't know -- when you say there's a typo, you referring to there's a mistake on that cover page?
>
> [FOREPERSON]: Yes, sir.

- 13 -

THE COURT: But you're not concerned about what the judgment said? The judgment has the offense date, or the conviction date as October.

[FOREPERSON]: The concern is about the mistake on the cover letter.

THE COURT: Yeah, the date of offense is October 24th. And I read that in my instruction, the date of offense is October 24, 2010. And the date of conviction was March 9, 2010. And additionally, as far as the law, you're to follow the Court's instructions as to what the law is. And when I gave you those dates, those are the Court's instructions. Now, I can't help but ask this, at the beginning of the trial all three of us articulated what the burden of proof was, proof beyond a reasonable doubt. I'm just curious, why would anyone think that proof beyond a reasonable doubt does not apply to the entire trial? We bo[re] that out at jury selection. What is it that that bec[a]me a question, that you wouldn't think it applies to count two as well as it did to count one the entire trial? Can you enlighten me, [foreperson]?

[FOREPERSON]: Yes. There is concerns because that's not an accurate document.

THE COURT: All right. Well –

[FOREPERSON]: But I think we can discuss this further and come to a conclusion.

THE COURT: Yes. I mean, that's for you to determine.

[FOREPERSON]: Yes, sir.

THE COURT: I can't make -- I cannot –

[FOREPERSON]: You've answered our questions.

> THE COURT: I can answer the question but I can't tell you what to do.
>
> [FOREPERSON]: I think you answered it, sir.
>
> THE COURT: Okay. Approach the bench counsel.
>
> (Off the record bench conference.)

For the record, the court repeated the concern of the jury. The court then repeated its instructions on presumption of innocence, the State's burden of proof, and reasonable doubt.

We reject defendant's assertion that the trial court's comments amounted to improper notice or expression of opinion as to any fact in evidence. Notwithstanding that some of the trial court's response may have been a bit confusing, it was not necessarily erroneous. The trial court emphasized that it was the duty of the jury to determine the facts and whether the documents at issue were sufficient to indicate the State had met its burden of proof of as to the charge of habitual misdemeanor assault beyond a reasonable doubt. Thus, upon review of defendant's challenge to these statements by the trial court and the context in which they were made, we discern no improper expression of opinion by the trial court. Accordingly, defendant's argument is overruled.

NO ERROR.

Judge STROUD concurring.

Judge BROOK dissenting by separate opinion.

BROOK, Judge, dissenting.

The majority excuses numerous references in the trial court's charge to the jury that assumed the proof of the central fact at issue in this case: namely, whether Defendant had committed the assaultive act required for conviction of assault on a female. The majority concludes that these comments were not proscribed by N.C. Gen. Stat. §§ 15A-1222 and 15A-1232 when considered under the totality of the circumstances, which included an attempted curative instruction by the trial court. I disagree, and therefore respectfully dissent.

The State's case against Defendant was presented over the course of a one-day trial and was based on the testimony of the complaining witness, Claudette Little, and her daughter, Lucretia Little, as well as a photograph taken by Lucretia Little. Claudette Little described a violent episode in which Defendant woke her in the middle of the night at her apartment and wrapped a belt around his hand and struck her several times, bruising her eye and arm. She testified further that Defendant demanded oral sex after striking her. Lucretia Little described injuries she observed after picking her mother up down the street from her apartment the next morning. Lucretia Little photographed injuries to her mother's head, and this photograph was published to the jury.

The trial court began its substantive instruction on the charge of assault on a female as follows:

> The defendant, a male person, has been charged with assault on a female. For you to find the defendant guilty of this offense, the State must prove three days [sic] beyond a reasonable doubt:
>
> First, that the defendant intentionally assaulted the alleged victim. It has been described in this case by the prosecuting witness that the defendant hit her upon her head, that he hit her on her arms, about her body.
>
> You are the finders of fact. *You will determine what the assault was, ladies and gentlemen.*

(Emphasis added.) By instructing the jury that it would "determine *what* the assault *was*," rather than whether the alleged assault occurred, the trial court expressed an improper opinion on the evidence; the court assumed in this instruction the proof of the assaultive act and instructed the jury to find what the predicate act was, based on the evidence presented.

The trial court went on to instruct the jury:

> The Court is not telling you what it is, I'm just giving you a description. And there was also testimony by the witness that the defendant asked her to perform, by force, another act, which could be considered an assault. *But you will determine what the assault was.* I'm not telling you what it is. And if what I'm saying is the evidence and your recollection if different from what I say, you still should rely upon your recollection of the evidence, as to what the assault is that has been testified to in this case.

(Emphasis added.) Despite the court's suggestion that it was not, in fact, instructing the jury on whether an assault had occurred, by instructing the jury that "you will determine what the assault was," rather than charging the jury to determine *whether*

2

the assault had occurred, the trial court again expressed an improper opinion on the evidence; the court again assumed in its instruction the proof of the assaultive act, instructing the jury to determine what the assaultive act was, not if the act had been committed.

The jury subsequently asked for a written copy of the instructions. Though the trial court denied this request, the court indicated it would instead orally charge the jury again the following morning. After excusing the jury but before adjourning for the day, the trial court sought feedback from counsel on this instruction. The prosecutor requested that the court instruct the jury that, consistent with the indictment, the assault at issue involved allegations Defendant hit Claudette Little about the face and head. The trial court assented to this request, indicating he would charge the jury accordingly the next morning.

The next morning the court repeated the charge:

> Ladies and gentlemen, I will define, again, first. An assault does not necessarily have to involve contact, it could be putting someone in fear or imminent apprehension of contact, threatening contact. *But the facts of this case have demonstrated that the – <u>there was actual contact, that's a touching of some form that is nonconsensual and unwanted by the other party</u>.* In this case the particular assault has been described as hitting the prosecuting witness, Ms. Claudette Little, about her body multiple times. Yesterday I mentioned some other act based upon the testimony at the trial, that she stated that she was forced to perform. But for purposes of this trial, you do not have to consider that, just that it is alleged that she was hit about her body multiple times. *Whether that –*

3

> *whatever part of the body that may be, head, face, torso,*
> *arms, legs, that will be for you to determine as you are the*
> *finders of fact.*
>
> The defendant, a male person, has been charged with
> assault on a female. For you to find the defendant guilty of
> this offense, the State must prove three things beyond a
> reasonable doubt: First, that the defendant intentionally
> assaulted the alleged victim, that's described by this case
> by hitting her about her body multiple times.
>
> Second, that the alleged victim was a female person.
>
> And third, that the defendant was a male person at least
> 18 years of age.

When the court instructed the jury that "the facts of this case have demonstrated that . . . there was actual contact, that's a touching of some form that is nonconsensual and unwanted by the other party[,]" rather than charging the jury to determine whether the facts had demonstrated such an act had occurred, the court again expressed an improper opinion on the evidence, invading the province of the jury. Likewise, when the court instructed the jury that it was to determine which part of the complaining witness's body was struck – whether it was her "head, face, torso, arms, [or] legs[,]" the court's instruction took as proven the assaultive act the jury was required to find; that is, that Defendant struck the complaining witness in the first place. This too was improper and in violation of N.C. Gen. Stat. §§ 15A-1222 and 15A-1232.

4

The transcript suggests that the trial court appreciated its error in this instance. After the trial court delivered this instruction to the jury, counsel for Defendant asked to approach and a bench conference ensued. At the conclusion of this bench conference, the trial court attempted a curative instruction, including the admonition that "[t]he fact [sic] are not what I say."

The majority concludes that, under the totality of the circumstances, whether the evidence showed an assault was left entirely for the jury. In essence, the majority holds that the trial court's references to the jury as fact-finder cleansed the taint caused by the repeated improper comments on the evidence noted above.

As a general matter, this conclusion is at odds with the reality that "[t]he trial judge occupies an exalted station. Jurors entertain great respect for his [or her] opinion, and are easily influenced by any suggestion coming from him [or her]." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951); *see also State v. Holden*, 280 N.C. App. 426, 429, 185 S.E.2d 889, 892 (1972) ("Jurors respect the judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench."). This exalted status is why it is of paramount importance that he or she "abstain from conduct or language which tends to discredit or prejudice the accused or his [or her] cause with the jury." *Carter*, 233 N.C. at 583, 65 S.E.2d at 10.

The majority also suggests the impact of repeated judicial commentary implicitly addressing witness credibility and explicitly assuming as true pivotal facts

is readily undone. But our Court has not hesitated to acknowledge there is no unringing those bells, even given quantitatively and qualitatively less troubling commentary. *See State v. Guffey*, 39 N.C. App. 359, 361, 250 S.E.2d 96, 97 (1979) (ordering new trial where six words obliquely assuming defendant's guilt violated N.C. Gen. Stat. § 15A-1222 and, in the totality of the circumstances, prejudiced defendant because they "went to the heart of the trial").

The principal case upon which the majority relies, *State v. Young*, 324 N.C. 489, 380 S.E.2d 94 (1989), does not support its conclusion regarding the trial court's improper opinions on the evidence. As noted by the majority, "[in *Young*, . . . [t]he trial court's instructions contained the statement '*if you find* that the defendant made that confession, *then* you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give it.'" *Supra* at ___, (quoting 324 N.C. at 498, 380 S.E.2d at 99 (emphasis preserved)). Despite emphasizing the conditional framing of the instruction in *Young*, the majority does not grapple with the fact that that framing explains why it passed muster. While the trial court characterized a statement made by the defendant as a "confession," a characterization our Court had previously held imported an inadvertent expression of opinion as to the truth of the alleged statement, *see State v. Bray*, 37 N.C. App. 43, 46, 245 S.E.2d 190, 192 (1978), its conditional if/then framing of the instruction did not import any improper opinion as

6

to the confession's truth, *see Young*, 324 N.C. at 498, 380 S.E.2d at 99. This framing thus left to the jury (1) whether the confession, in fact, occurred; (2) whether the confession was truthful; and (3) if the confession was truthful, the weight to afford to it. *See id.* ("This instruction made it clear that, although there was evidence tending to show that the defendant had confessed, the trial court left it entirely for the jury to determine whether the evidence showed that the defendant in fact had confessed."). *Young* is therefore easily distinguishable from the present case.

Unlike the conditional statement challenged in *Young*, the trial court's instructions in this case repeatedly assumed the proof of a central fact at issue in the case, and one required to convict Defendant of any of the offenses with which he stood accused: the assaultive act required for conviction of assault on a female. In so doing, the trial court's comments "went to the heart of the trial," transgressing the line articulated by *Guffey* not once but many times. 39 N.C. App. at 361, 250 S.E.2d at 97. The trial court's improper comments thus invaded the province of the jury in violation of N.C. Gen. Stat. §§ 15A-1222 and 15A-1232. Accordingly, Defendant is entitled to a new trial.

I respectfully dissent.